# SUPERIOR COURT
OF THE
# STATE OF DELAWARE

**WILLIAM L. WITHAM, JR.**
RESIDENT JUDGE

KENT COUNTY COURT HOUSE
38 THE GREEN
DOVER, DELAWARE 19901

October 18, 2016

Thomas C. Marconi, Esquire
Losco & Marconi, P.A.
P.O. Box 1677
Wilmington, Delaware 19899

Douglas A. Shachtman, Esquire
The Shachtman Law Firm
1200 Pennsylvania Avenue, Suite 302
Wilmington, Delaware 19806

Re: *M&T Bank v. Dawn R. Ellery, Gwen D. Rinaldi & Robin A. Silverman*
Civil Action No. K16L-08-013 WLW
Letter Order Upon Defendants' Motion to Stay Action

Dear Counsel:

The Court has carefully considered the arguments of counsel as well as the factors that must be examined for application of a stay.

The Defendants to this foreclosure action have moved to stay the proceedings against them. A stay is necessary, they argue, so that the Court of Chancery may decide a matter relating to their attempts to sell the farm property that is the subject of this suit. Plaintiff M&T Bank objects to the entry of a stay, contending that the pending sale does not affect the Plaintiff's paramount legal right as a mortgagee to foreclose on its interest.

Because the entry of a stay would best preserve the parties' interest in an efficient resolution and most effectively further the end of judicial economy, the action is *stayed*. If the Court of Chancery issues an order approving the sale, the initial stay will be modified to remain in place for an additional 120 days from the

date of the Chancery Court order. If the Court of Chancery issues an order rejecting the sale agreement, the stay may be lifted.

## FACTUAL BACKGROUND[1]

In Smyrna, Delaware, in 1955, Lawrence and Dorothy Ellery purchased a farm tract at what is now 3431 Dupont Boulevard. After the couple's death, a one-half undivided interest in the farm ultimately passed to their daughter, Patricia Gibbs Ellery, and another one-half interest passed to their son, Lawrence, Jr.

Lawrence, Jr. passed away in the year 2003 and his interest passed to his three daughters. Those three daughters – Defendants Dawn Ellery, Gwen Rinaldi, and Robin Silverman, each held (and continue to hold) a one-sixth interest in the farm property alongside their aunt's one-half interest. Not long after their father's estate administration was complete, the Defendants began trying to sell the farm.

For purposes that have not been revealed to the Court, the Defendants signed a business loan agreement for $100,000 with Wilmington Trust Company (predecessor to Plaintiff M&T Bank) in November 2004. Scarcely more than two years later, the Defendants sued their aunt in Chancery Court, seeking to force the partition of the farm property. The Defendants complained that several attempts to sell the property, at prices ranging from eight to about sixteen million dollars, were stymied by their aunt's intransigence. In February 2008, the Court of Chancery ordered the property sold as a unit in partition, appointing a trustee for that purpose.

In the meantime, the Defendants secured their Wilmington Trust Company loan agreement with a mortgage on their interests in the farm property. As the country plunged into years of recession, efforts to sell the property did not come to fruition. Apparently unable to fully repay the loan, the Defendants entered into four successive

---

[1] This factual narrative does not amount to adjudicative fact-finding but a mere explanation of the background available to the Court. Historical information about the ownership of the property is based on the Chancery Complaint found at Exhibit F of the Defendants' Motion to Stay Action.

Change in Terms agreements with Wilmington Trust and eventually into a series of forbearance agreements. The Defendants defaulted on the last of the forbearance agreements, and on August 5, 2016, M&T Bank, by now the assignee of the note and mortgage, sued them in this Court. The Defendants answered, asserting a number of defenses.

Not long after the suit was filed, however, the trustee found a buyer. On September 27, 2016, the trustee and a buyer executed a sale agreement wherein the buyer agreed to purchase the property for more than $3.2 million. The agreement provided for a $175,000 deposit to be held in escrow. The deposit would be refundable if the buyer terminated the agreement prior to the expiration of a 120-day due diligence period. But at the end of that period, the deposit would be fully earned, non-refundable, and payable to the seller at settlement "for application to payment of any liens against the Property."[2]

After the sale agreement was executed, the Defendants moved for a stay of the foreclosure action, pending the Court of Chancery's approval of the trustee's sale agreement. After moving for a stay, the Defendants provided this Court a copy of their petition which was filed with the Register in Chancery on October 11. They also provided a copy of the escrow agreement and evidence showing that the deposit had been placed in escrow. At oral argument on the motion, defense counsel represented that the language of the sale agreement was being further modified to reflect the parties' understanding that the deposit would be paid to the lienholders at the close of the due diligence period.

## THE PARTIES' CONTENTIONS

The Defendants argue that they are entitled to a stay because the *res* of the *in rem* portion of this action and of the Chancery Court action are the same. In addition, they claim, the sale agreement adequately protected M&T Bank's rights. They contend that M&T Bank's complaint was defective in various ways.

---

[2] Defs.' Mot. to Stay Action, Ex. F., ¶ 2(b).

M&T Bank opposes the Defendant's motion for a stay, arguing that the action should not be stayed in favor of an eight-year-old Court of Chancery case that did not involve the same issues or parties. M&T Bank notes that the pending sale and Court of Chancery proceedings would not affect the Court's ability to proceed through the foreclosure case and execute on the judgment.

## STANDARD OF REVIEW

The Superior Court has broad discretion in its exercise of its "inherent authority to stay proceedings in control of its docket after balancing the competing interests."[3] In determining whether to exercise its discretion to enter a stay, the Court may consider factors such as "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of persons not parties to the civil litigation, and (5) the public interest."[4] "A stay is appropriate where it is likely to conserve judicial and party time, resources, and energy."[5]

## DISCUSSION

It is unremarkable for the Superior Court to defer to the Chancery Court in areas of their concurrent jurisdiction.[6] This rule is generally invoked, however, only where the parties are the same in both actions.[7] In this case, M&T Bank was not a party to the Chancery action.

---

[3] *Fleming & Hall, Ltd. v. Clarendon Nat'l Ins. Co.*, No. 97C-12-187, 1998 WL 734794, at *1 (Del. Super. Sept. 24, 1998).

[4] 1 Am. Jur. 2d *Actions* § 66 (2016).

[5] *Id.*

[6] *E.g.*, *Strickler v. Sussex Life Care Assocs.*, 541 A.2d 587, 590 (Del. Super. 1987); *Smith v. Hamilton*, No. 83C-OC-28, 1984 WL 553515, at *1 (Del. Super. Dec. 18, 1984).

[7] *See id.*

4

Instead, the Court will exercise its discretion to enter a stay in view of the fact that, on balance, most of the five factors weigh in favor of a stay.

The first factor is the private interest of the plaintiff balanced against the prejudice to the plaintiff if delayed. This factor weighs against the entry of a stay. M&T Bank has an interest in protecting its rights as a creditor against debtors that have defaulted on their obligation. Obtaining a judgment would ensure M&T Bank's ability to realize upon its initial investment regardless of whether the current sale agreement is approved and consummated. However, as M&T Bank's counsel stated at oral argument, the bank is amply secured.

The second factor is the private interests of and burden on the defendants. This factor weighs in favor of the entry of a stay. The Defendants here will be significantly burdened if a stay is not entered, because a foreclosure on their interest will divest them of their interest in the proceeds of the sale and might result in a windfall to M&T Bank or another buyer at sheriff's sale. The trustee has secured a sale agreement after nine years of searching, and that agreement appears to protect in full M&T Bank's interest as mortgagee.

The third factor is the interests of the courts. This factor weighs in favor of the entry of a stay. Comity between this Court and the Court of Chancery would suggest awaiting the Court of Chancery's review of the sale of the property it partitioned. But beyond comity, this Court also has an interest in efficiently managing its own docket. It is unnecessary to continue all the way through foreclosure proceedings if the Court of Chancery (and the consummation of the sale agreement) may be able to quickly resolve M&T Bank's concerns.

The fourth factor is the interest of persons not parties to the civil litigation. This may weigh in favor of a stay, although it is admittedly more speculative. The buyer in the sale agreement might prefer to purchase the property without the cloud that a foreclosure might place on the title. As such, a stay might better protect the buyer's interest in a clear title. A delay in a sale caused by a litigated foreclosure proceeding would, as a direct consequence, additionally delay development of the

5

property.

The final factor is the public interest. The Court can discern neither help nor harm to the public interest if it enters a stay, and thus this factor weighs neither for nor against entry of a stay.

In view of all of the factors above, and the reality that judicial and party time is best saved by avoiding duplicative proceedings, the entry of a stay is appropriate here. The Defendant's other objections to the complaint are not relevant to this motion for a stay and are thus disregarded for the moment.

## CONCLUSION

The action is therefore **STAYED.** If the Court of Chancery issues an order approving the sale, the initial stay will be modified to remain in place for an additional 120 days from the date of the Chancery Court order. If the Court of Chancery issues an order rejecting the sale agreement, the stay may be lifted.

**IT IS SO ORDERED.**

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh